James P. Murphy, OSB #067084
**Murphy Armstrong Firm, LLP**
719 Second Ave., Suite 701
Seattle, WA 98104
Telephone: (206) 985-9770
jpm@maflegal.com

Mathew J. Antonelli (*pro hac vice*)
**RUGGERI PARKS WEINBERG LLP**
201 Spear Street, Suite 1100
San Francisco, CA 94105
Tel: (415) 429-0998
Fax: (202) 984-1401
mantonelli@ruggerilaw.com

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVSION

| | |
|---|---|
| TWIN CITY FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WEST LINN FAMILY HEALTH CENTER, P.C.,<br><br>Defendants. | Case No.: 3:25-cv-01442-YY<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Twin City Fire Insurance Company ("Twin City") brings this First Amended Complaint seeking declaratory relief and judgment pursuant to 28 U.S.C. §§ 2201 and 2202.[1] Specifically, Twin City seeks a declaration of its rights and obligations under certain insurance policies issued by Twin City to Defendant West Linn Family Health Center PC ("West Linn"). The matters that give rise to this suit and the relief Twin City seeks are underlying lawsuits filed by former patients of Dr. David Farley. Those lawsuits allege that Dr. Farley sexually abused these former patients during

---

[1] This First Amended Complaint is filed as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1). Pursuant to LR 15-1(b), a copy of this amended pleading identifying changes from the original Complaint is attached hereto as **Exhibit A**.

FIRST AMENDED COMPLAINT
Page | 1

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

and under the guise of providing medical services. The suits include claims against West Linn for negligent supervision, hiring, retention, and training.

## PARTIES AND JURISDICTION

1. Plaintiff Twin City Fire Insurance Company is an Indiana company with its principal place of business in Connecticut.

2. Upon information and belief, Defendant West Linn Family Health Center, P.C. is an Oregon professional corporation with its principal place of business in Clackamas County, Oregon.

3. This Court has jurisdiction over this matter because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1).

4. Venue is proper in this Court pursuant to U.S.C. § 1391(b) because a substantial part of the events giving rise to this dispute occurred in this judicial district.

## FACTUAL BACKGROUND

### A.   The Underlying Action

5. On November 25, 2020, former patients of Dr. Farley filed a lawsuit in the Circuit Court of the State of Oregon for the County of Multnomah, captioned *Jane Coe, et al. v. David Farley, M.D., et al.*, Case No. 20CV37412 (the "Underlying Action").

6. The operative complaint in the Underlying Action is the Tenth Amended Complaint, attached hereto as **Exhibit B**.[2] Plaintiffs in the Underlying Action (the "Coe Plaintiffs") generally allege that Dr. Farley sexually assaulted them during medical examinations performed between 1988 and 2020.

---

[2] Twin City's original complaint referred to the Eighth Amended Complaint. Plaintiffs in the Underlying Action have now amended their complaint to add additional plaintiffs. The factual allegations referenced in Twin City's original complaint remain substantially the same as those contained in the Tenth Amended Complaint in the Underlying Action.

FIRST AMENDED COMPLAINT
Page | 2

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

7. The Tenth Amended Complaint alleges that Dr. Farley founded West Linn Family Health Center in 1989 and registered West Linn Family Health Center, P.C. in 1993. Tenth Am. Compl. (**Ex. B**) at ¶ 10.

8. As to West Linn, the Coe Plaintiffs allege that West Linn breached duties owed to patients because West Linn knew or should have known that Dr. Farley had engaged in unlawful sexually abusive conduct and was continuing to do so. Rather than disclose this to patients or report Dr. Farley to the authorities, West Linn is alleged to have allowed Dr. Farley to remain in his position of power and control and continued to hold Dr. Farley out to be a trustworthy doctor. In no insignificant part, this is because Dr. Farley exercised significant control and influence over West Linn's operations as its president from the time he founded the practice until his retirement in late 2020.

9. The Tenth Amended Complaint further asserts that West Linn failed in its provision of services to patients by failing to implement reasonable policies and procedures to act as a safeguard against Dr. Farley's abuse and failing to adequately train and supervise staff, including both Dr. Farley himself and others who failed to report or stop Dr. Farley's unlawful abuse of his patients.

10. Specifically, the Coe Plaintiffs allege that they "came into contact with [Dr.] Farley and reasonably believed [Dr.] Farley was an employee of [West Linn]. Farley used the guise of medical care and treatment to normalize intimate, inappropriate, and sexually abusive contact with Plaintiffs." *Id.* at ¶ 21.

11. Dr. Farley is alleged to have been "hired, employed, and retained" by West Linn, and to have remained under West Linn's "direct supervision, management, agency, and control[]" at all relevant times. *Id.* at ¶ 17.

12. West Linn, in its capacity as Dr. Farley's "employer[] and supervisor[,]" is alleged to have owed duties of care to the Coe Plaintiffs arising out of West Linn's knowledge that Dr. Farley was "in contact with and providing medical care to patients." *Id.* at ¶ 18.

FIRST AMENDED COMPLAINT
Page | 3

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

13. The Coe Plaintiffs allege that West Linn "had the authority and ability to prevent" the Coe Plaintiffs' abuse by removing Dr. Farley from his position as a physician. *Id.* at ¶ 23.

14. The Coe Plaintiffs further allege that West Linn knew or should have known that Dr. Farley had engaged in unlawful sexually abusive conduct and was continuing to do so, but failed to report Dr. Farley to law enforcement or the Oregon Medical Board. *Id.* at ¶¶ 24, 27.

15. The Coe Plaintiffs allege that West Linn employees had knowledge of Dr. Farley's wrongdoing as early as 1993, but that West Linn "failed to report known instances of misconduct regarding [Dr. Farley's] sexual abuse despite numerous complaints lodged by patients." *Id.* at ¶ 25(i), 26.

16. Instead, West Linn is alleged to have ignored and failed to investigate complaints, continued to allow Dr. Farley to remain in a "position of authority and trust after [West Linn] knew or should have known that he molested his young patients", failed to "take reasonable steps and to implement reasonable safeguards to avoid acts of unlawful sexual conduct by [Dr.] Farley," and failed to "put in place a system or procedure to supervise or monitor physicians . . . to insure they do not molest or abuse patients[.]" *Id.* at ¶ 32.

17. Further, the Coe Plaintiffs assert that West Linn failed to supervise and train its medical staff to protect patients from Dr. Farley's abuse. West Linn is further alleged to have failed to adopt and implement appropriate safety measures, policies, and procedures designed to protect patients. *Id.* at ¶ 36.

18. West Linn is alleged to have employed chaperones and/or agents who were responsible for ensuring that Dr. Farley did not abuse patients; however, those chaperones and/or agents are alleged to have routinely followed Dr. Farley's instruction to either leave the examination room or turn away from Dr. Farley during examinations, thus allowing him to abuse his patients. *See id.* at ¶ 35. The Coe Plaintiffs assert that West Linn failed to adequately train and supervise this staff, who should have reported Dr. Farley's wrongdoing or taken other appropriate action.

FIRST AMENDED COMPLAINT
Page | 4

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

19. Despite having knowledge of Dr. Farley's actions, West Linn is alleged to have actively "ignored and suppressed" Dr. Farley's misconduct by ignoring patient complaints, failing to investigate or report "sexual harassment and abuse" and concealing known facts regarding Dr. Farley's abusive actions from patients and law enforcement officials.

20. Dr. Farley is alleged to have acted intentionally and maliciously, with knowledge that his abuse would harm the Coe Plaintiffs.

21. The Tenth Amended Complaint asserts causes of action against West Linn for: intentional infliction of emotional distress; negligence; negligent supervision/credentialing; and assault and battery. In addition to monetary damages, the Coe Plaintiffs seek declaratory and injunctive relief, including court supervision of West Linn.

**B.     As West Linn's President, Dr. Farley's Knowledge is Imputed to the Business**

22. The Coe Plaintiffs allege that at all relevant times, Dr. Farley was "an agent, apparent agent, servant, and/or employee" of West Linn. *Id.* at ¶ 11.

23. According to the public filings on record with the Oregon Secretary of State, Dr. Farley was the President and Registered Agent of West Linn from the time he founded West Linn until revocation of his medical license in 2020. *See* **Exhibits C** & **D**. Dr. Farley was the sole incorporator of West Linn and West Linn's primary owner or shareholder until his retirement.

24. As the founder and chief executive of West Linn, Dr. Farley exercised control and power over the clinic and its operations. Accordingly, the Coe Plaintiffs' allegations that West Linn failed to properly supervise, train, and/or hire Dr. Farley are essentially allegations that Dr. Farley failed to supervise himself or allow a system to be put in place to prevent his own intentional wrongdoing.

25. Dr. Farley is alleged to have acted intentionally in assaulting his patients over the course of many years. *See, e.g.,* **Ex. B** at ¶ 782 ("Farley's conduct described herein was intentional and malicious. . ."); ¶ 801 ("Defendant Farley acted with the intent to cause a harmful or offensive contact with the Plaintiffs, including but not limited to the numerous aforementioned instances of

FIRST AMENDED COMPLAINT
Page | 5

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

sexual abuse and molestation."). He is further alleged to have used his position of trust and authority at West Linn to hold himself out as a trusted medical professional and further his systematic abuse. Dr. Farley had actual knowledge of his own wrongdoing at all times, and further knowledge of the intentional harm inflicted on his patients at West Linn. Dr. Farley also had knowledge of his own wrongdoing as a matter of law insofar as sexual assault is inherently harmful.

26. The Coe Plaintiffs allege that West Linn knew or should have known of Dr. Farley's abusive actions, based on complaints received by the clinic, observations of other clinical staff, and/or because West Linn had a duty to supervise and monitor Dr. Farley.

27. Additionally, because Dr. Farley was the President and controlling officer of West Linn, Dr. Farley's knowledge of his wrongdoing and intentional conduct is imputed onto West Linn.

28. West Linn had knowledge of Dr. Farley's wrongdoing and the harm he had caused patients before it applied for its insurance policies with Twin City, because Dr. Farley's knowledge and intent is imputed to West Linn and because West Linn is alleged to have had independent knowledge of Dr. Farley's wrongdoing based on, among other things, patient complaints and employee observations.

29. Despite this knowledge, West Linn failed to disclose this fact to Twin City and, upon information and belief, intentionally withheld and concealed that information for the purposes of securing insurance.

C. **The Twin City Policies**

30. Twin City issued the following insurance policies to named insured West Linn Family Health Center, PC: Policy No. 52 SBA IX6292 (Policy Period: July 1, 2017 to July 1, 2018); Policy No. 52 SBA IX6292 (Policy Period: July 1, 2018 to July 1, 2019); Policy No. 52 SBA IX6292 (Policy Period: July 1, 2019 to July 1, 2020); and, Policy No. 52 SBA IX6292 (Policy Period: July 1, 2020 to July 1, 2021) (collectively, the "Twin City Policies").

31. Each of the Twin City Policies provides Business Liability Coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property

FIRST AMENDED COMPLAINT
Page | 6

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

damage,' or 'personal and advertising injury' to which this insurance applies," subject to a per-occurrence limit of $1 million and a general aggregate limits of $2 million.

32. The insuring agreements of the Twin City Policies (at Business Liability Coverage Form SS 00 08 04 05) state as follows:

> **Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.
> . . .
>
> **b.** This insurance applies to:
>
> **(1)** "Bodily injury" and "property damage" only if:
>
> **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>
> **(b)** The "bodily injury" or "property damage" occurs during the "policy period" . . .
>
> **(2)** "Personal and advertising injury" caused by an offense arising out of your business, but only if the offense is committed in the "coverage territory" during the policy period.

33. The insuring agreements in the Business Liability Coverage Forms further contain known loss provisions stating that the Twin City Policies do not cover damages because of "bodily injury" that the insured knew, before the policy period, had occurred or begun to occur. Specifically, the insuring agreements provide as follows:

> **b.** This insurance applies:
>
> **(1)** To "bodily injury" and "property damage" only if:
>
> […]
>
> **(c)** Prior to the policy period, no insured listed under Paragraph 1. Of Section C. – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or

FIRST AMENDED COMPLAINT
Page | 7

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

"property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section C. – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

[…]

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

34. The Business Liability Coverage Forms define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including mental anguish or death at any time."

35. "Occurrence" is defined in the Business Liability Coverage Forms of the Twin City Policies as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

36. Business Liability Coverage under the Twin City Policies is subject to certain exclusions, including an exclusion for bodily injury or personal and advertising injury that is expected or intended from the standpoint of the insured. That exclusion states:

This insurance does not apply to:

**a. Expected Or Intended Injury**

(1) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or

(2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

37. The Twin City Policies also contain an exclusion for "bodily injury" or "personal and advertising injury" arising from the rendering or failure to render any "professional service." That exclusion states:

FIRST AMENDED COMPLAINT
Page | 8

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

**B. EXCLUSIONS**

**1. Applicable to Business Liability Coverage**

This insurance does not apply to:

. . .

j. Professional Services
"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional service. This includes but is not limited to:

. . .

(4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;

38. The Twin City Policies also include umbrella liability supplemental contracts ("Umbrella Coverage") for "those sums that the 'insured' becomes legally obligated to pay as 'damages' in excess of the 'underlying insurance' or of the 'self-insured retention' . . . because of 'bodily injury', 'property damage', or 'personal and advertising injury' to which this insurance applies caused by an 'occurrence.'"

39. Umbrella Coverage only applies to bodily injury, property damage, or personal and advertising injury that occurs during the policy period, and only if the insured did not know, before the policy period began, that such injury had occurred or begun to occur.

40. Umbrella Coverage is likewise subject to certain exclusions, including an exclusion for injury that is expected or intended from the standpoint of the insured. The exclusion provides:

**B. Exclusions**

14. Expected or Intended

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

FIRST AMENDED COMPLAINT
Page | 9

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

41. Further, there is no Umbrella Coverage for "'personal and advertising injury" except where "underlying insurance' is applicable to 'personal and advertising injury' and to claims arising out of that 'personal and advertising injury.'"

42. Umbrella Coverage under the Twin City Policies is further subject to an exclusion for designated professional services, including medical services, as follows:

**EXCLUSION - DESIGNATED PROFESSIONAL SERVICES**

This endorsement modifies insurance provided under the

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT SCHEDULE**

Description of Professional Services:

1. Medical Services Treatment, Advice or Instruction

This policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of or failure to render any professional services described in the Schedule of this endorsement.

D. *Disputes Concerning Twin City's Obligations Under the Twin City Policies*

43. West Linn has demanded a defense and indemnity for the Underlying Action under the Twin City Policies.

44. In response to West Linn's notices to Twin City of the Underlying Action, Twin City agreed, subject to a full reservation of rights, to participate in West Linn's defense under the Business Liability Coverage part of the Twin City Policies.

45. Twin City has paid an amount in excess of $75,000 pursuant to its reservation of rights.

46. On information and belief, West Linn disputes Twin City's reservation of rights, including but not limited to its reservation regarding West Linn's knowledge of Dr. Farley's wrongdoing prior to the inception date of the Twin City Policies, its reservation with respect to harm

FIRST AMENDED COMPLAINT
Page | 10

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

1. that is expected or intended, and its reservation with respect to the professional services exclusions in the Twin City Policies.

47. The Twin City Policies do not provide any coverage for the Underlying Action, by their terms and as a matter of law and public policy.

48. An actual controversy between the parties exists and is ripe for resolution, and Twin City accordingly seeks a declaration of its rights and duties under the Twin City Policies with respect to the Underlying Action.

49. Twin City is entitled to a declaration that under the terms, conditions, and exclusions of the Twin City Policies, and as a matter of law and public policy, it has no duty to defend or indemnify West Linn in the Underlying Action.

## COUNT I: DECLARATORY JUDGMENT

### (No Coverage for Injury or Damage that is Expected or Intended)

50. Twin City reasserts and incorporates Paragraphs 1 through 49 as if fully set forth herein.

51. As a matter of public policy, coverage is not available for intentional wrongdoing or criminal actions, including the sexual abuse that Dr. Farley is alleged to have engaged in and the systematic cover-up that West Linn is alleged to have participated in.

52. There is also no coverage under the express terms of the Twin City Policies for any injury or damage that was expected or intended from the standpoint of the insured.

53. Dr. Farley is alleged to have acted intentionally and maliciously both in abusing patients and in structuring West Linn's operations in a way that permitted him to systematically carry out that abuse over the course of many years.

54. Dr. Farley plainly always had knowledge of his own intentional actions and misconduct.

55. As the President and owner of West Linn, Dr. Farley's intent and knowledge is imputed onto the business.

FIRST AMENDED COMPLAINT
Page | 11

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

56. The Underlying Action alleges injury that was expected or intended by West Linn, both because West Linn had knowledge of Dr. Farley's actions and because Dr. Farley's knowledge and wrongful intent is imputed to West Linn.

57. Accordingly, Twin City is entitled to a declaration that there is no coverage under the Twin City Policies for the Underlying Action pursuant to the expected or intended exclusions of the Twin City Policies, as a matter of law and public policy, and based on the other terms, conditions, and exclusions of the Twin City Policies.

## COUNT II: DECLARATORY JUDGMENT

**(No Coverage for Known Loss)**

58. Twin City reasserts and incorporates Paragraphs 1 through 57 as if fully set forth herein.

59. There is no coverage under the Twin City Policies for bodily injury that the insured knew, before the policy period, had occurred or begun to occur.

60. The Underlying Action alleges that West Linn knew or should have known of Dr. Farley's wrongdoing as early as 1993 but despite this knowledge, West Linn actively concealed and in fact facilitated his actions.

61. West Linn is alleged to have known about Dr. Farley's abuse of patients prior to the start of the first policy period under the Twin City Policies. Despite this knowledge, on information and belief, West Linn failed to disclose this information to Twin City when it applied for and renewed the Twin City Policies. Instead, on information and belief, West Linn concealed this material fact from Twin City.

62. Further, to the extent the Coe Plaintiffs allege negligence against West Linn for failing to stop or prevent Dr. Farley's abuse, the Coe Plaintiffs must allege and establish that West Linn had knowledge of Dr. Farley's wrongdoing and knowingly allowed it to continue.

FIRST AMENDED COMPLAINT
Page | 12

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

63. Dr. Farley also always had knowledge of his own misconduct and wrongdoing, including before the start of the first policy period under the Twin City Policies, and his knowledge is imputed to West Linn.

64. Accordingly, West Linn had knowledge that bodily injury had occurred, in whole or in part, prior to the first policy period of the Twin City Policies.

65. Thus, Twin City is entitled to a declaration that there is no coverage under the Twin City Policies for the Underlying Action pursuant to the policies' known loss provisions and/or pursuant to the known loss doctrine under applicable law.

## COUNT III: DECLARATORY JUDGMENT

### (Professional Services Exclusions)

66. Twin City reasserts and incorporates Paragraphs 1 through 66 as if fully set forth herein.

67. There is no coverage under the Twin City Policies for injury or damage arising out of the rendering or failure to render professional services.

68. All of the allegations in the Underlying Action are from the rendering or failure to render professional services, including because they center on violations of the doctor/patient relationships and concomitant violations of the relationship between the doctor's office and its patients.

69. The causes of action against West Linn allege professional negligence in West Linn's supervision, retention, and oversight of Dr. Farley. *See, e.g.* **Ex. B** at ¶ 791 (West Linn "owed Plaintiffs a special duty of care that medical professionals dealing with vulnerable medical patients owe to protect them from harm."), The proper oversight and supervision of medical professionals is a professional service being provided by West Linn and required specialized knowledge, training, experience, and skill in order to meet professional standards.

70. The Coe Plaintiffs allege that West Linn failed to adhere to standards of practice required in the healthcare profession in the provision of professional medical services to the clinic's

FIRST AMENDED COMPLAINT
Page | 13

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

patients. There is no coverage for West Linn's alleged professional negligence or breach of professional obligations to supervise and train Dr. Farley or other clinical staff, its alleged failure to implement proper policies and procedures, or its failure to report Dr. Farley to the authorities.

71. The Coe Plaintiffs further assert direct claims against Dr. Farley that arise from the medical treatment he provided and his abuse of patients under the guise of medical services. These claims are likewise excluded.

72. Twin City is entitled to a declaration that there is no coverage under the Twin City Policies for the Underlying Action pursuant to the Twin City Policies' professional services exclusions.

## PRAYER FOR RELIEF

WHEREFORE, Twin City respectfully requests that the Court:

A. Declare that Twin City has no coverage obligations for the Underlying Action under the Twin City Policies;

B. Declare that, because the Twin City Policies do not afford coverage for the Underlying Action, Twin City does not owe any duty to defend or indemnify West Linn in the Underlying Action;

C. Declare that, in the absence of a duty to defend, Twin City is entitled to reimbursement of the defense expenses paid on behalf of West Linn to defend against the Underlying Action;

D. Award Twin City its fees and costs for this litigation; and

E. Grant Twin City any further appropriate relief as the Court determines to be warranted.

## DEMAND FOR JURY TRIAL

Twin City respectfully demands a jury trial for all issues so triable.

FIRST AMENDED COMPLAINT
Page | 14

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770

Respectfully submitted this 3rd day of November, 2025

*/s/ James P. Murphy*
James P. Murphy (OSB #067084)
MURPHY ARMSTRONG FIRM LLP
719 Second Avenue, Suite 701
Seattle, WA 98104
Phone: 206-985-9770; Fax 206-985-9790
jpm@maflegal.com

Mathew J. Antonelli (*pro hac vice*)
RUGGERI PARKS WEINBERG LLP
201 Spear Street, Suite 1100
San Francisco, CA 94105
Phone: 415-429-0998; Fax 202-984-1401
mantonelli@ruggerilaw.com

FIRST AMENDED COMPLAINT
Page | 15

Murphy Armstrong Firm, LLP
719 Second Ave., Suite 701
Seattle, WA 98104
(206) 985-9770